# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

DARION EZELL DEANDRE PARKER,

        Plaintiff,

v.

MILWAUKEE COUNTY,

        Defendant.

Case No. 26-CV-575-JPS

**ORDER**

## 1. INTRODUCTION

In April 2026, Plaintiff Darion Ezell Deandre Parker ("Parker"), proceeding pro se, filed this action alleging that Defendant Milwaukee County (the "County") violated his constitutional rights in connection with a state criminal conviction that was the subject of a petition for habeas corpus. ECF No. 1. After the Court denied his motion for leave to proceed in forma pauperis, Plaintiff paid the filing fee. ECF No. 4; May 7, 2026 docket entry. The Court will therefore screen Plaintiff's complaint in accordance with 28 U.S.C. § 1915. *See* ECF No. 4 at 3–4.

## 2. SCREENING STANDARD

"[D]istrict courts have the power to screen complaints filed by all litigants . . . regardless of fee status." *Rowe v. Shake*, 196 F.3d 778, 783 (7th Cir. 1999) (citing 28 U.S.C. § 1915(e)(2)(B) and *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997)). The purpose of such screening is to identify claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *Hoskins v. Poelstra*, 320 F.3d 761, 763 (7th Cir. 2003) ("District judges have

ample authority to dismiss frivolous or transparently defective suits spontaneously, and thus save everyone time and legal expense. This is so even when the plaintiff has paid all fees for filing and service . . . .") (citing *Rowe*, 196 F.3d at 783).

A claim is legally frivolous when it "lacks an arguable basis either in law or in fact." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)); *see also Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997) (quoting *Neitzke*, 490 U.S. at 325). The Court may dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327.

To state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). In other words, the complaint must give "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

In reviewing the complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak*, 810 F.3d at 480–81 (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)). However, the Court "need not accept as true 'legal conclusions, or threadbare recitals of the elements

of a cause of action, supported by mere conclusory statements.'" *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (citing *Ashcroft*, 556 U.S. at 678) (internal bracketing omitted). A court is obligated to give pro se litigants' allegations a liberal construction. *Kelsay v. Milwaukee Area Tech. Coll.*, 825 F. Supp. 215, 217 (E.D. Wis. 1993) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)). Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

3.      **FACTUAL ALLEGATIONS**

Parker's complaint references his petition for a writ of habeas corpus, which this Court granted in part in October 2025. ECF No. 1 (citing *Darion Ezell Deandre Parker v. Brian Cahak*, Case No. 21-CV-1361 (E.D. Wis. Nov. 29, 2021) (hereinafter the "Habeas Case")). The Habeas Case, in turn, challenged Parker's sentence in *State of Wisconsin v. Darion Ezell Parker*, Milwaukee County Circuit Court Case No. 2014CF004284, *available at* https://wcca.wicourts.gov/caseDetail.html?caseNo=2014CF004284&county No=40&index=0&mode=details (last visited July 1, 2026) (hereinafter the "State Case").[1]

In the State Case, Parker was represented by Attorney Jessica Bellows ("Attorney Bellows"). *See generally* State Case. Attorney Bellows was an attorney in private practice at that time, primarily doing criminal defense. Habeas Case, ECF No. 45 at 62–63. She represented Parker via "an appointment through the [Wisconsin] State Public Defender." *Id.* at 63

---

[1]The Court takes judicial notice of these happenings in Plaintiff's other cases. *See Daniel v. Cook County*, 833 F.3d 728, 742 (7th Cir. 2016) ("Courts routinely take judicial notice of the actions of other courts or the contents of filings in other courts." (citing *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997))).

(noting that the State Public Defender "farm[s] out some cases that they can't keep in-house for a variety of reasons").

Parker was charged with a count of Second Degree Recklessly Endangering Safety (Count One) and two counts of Armed Robbery with Threat of Force (Counts Two and Three). *See* State Case, "Charges" section. He ultimately proceeded to a jury trial on, and was found guilty of, all three counts. *Id.*, Jan. 26 and 27, 2015 docket entries. He was sentenced to a total of 18 years of incarceration. *See id.*, Feb. 13, 2015 docket entry; Habeas Case, ECF No. 51 at 1 (citing Habeas Case, ECF No. 1 at 2).

In the Habeas Case, as relevant here, Parker challenged Attorney Bellows' representation during the plea stage of the proceedings as constitutionally ineffective. Habeas Case, ECF No. 36 at 39–48. Specifically, he argued that Attorney Bellows "gave him just minutes to consider [a] morning-of-trial plea offer, and . . . did not tell him either the maximum sentence or the likely sentence that he faced if he took that offer," instead advising Parker to "reject" the offer. *Id.* at 39–40. Under the morning-of-trial offer, the prosecutor would have moved to dismiss Counts Two and Three at the time of sentencing, with Parker subject to a maximum term of imprisonment of ten years as to Count One. *Id.* at 6 (citation omitted), 7 n.4 (citing WIS. STAT. §§ 941.30(2) and 939.50(3)(g)).

The Court found that Attorney Bellows "performed deficiently by failing to make and convey to [Parker] an estimate of the likely sentence he would receive under the morning-of-trial plea offer." *Id.* at 41. It further found that the Wisconsin state court unreasonably applied *Lafler v. Cooper*, 566 U.S. 156 (2012) when "it summarily concluded that [Parker] could not show prejudice" resulting from Attorney Bellows' performance during plea negotiations. *Id.* at 43 (citation omitted). However, needing further factual

development to determine whether Parker was indeed prejudiced by Attorney Bellows' deficient performance, the Court referred the matter to Magistrate Judge Nancy Joseph to hold an evidentiary hearing and issue a report and recommendation on the issue of whether Parker was prejudiced and therefore entitled to habeas relief. *See id.* at 45–48.

Magistrate Judge Joseph did so and recommended that the Court find that Parker established prejudice and, accordingly, that his habeas petition be granted. *See generally* Habeas Case, ECF No. 51. The Court adopted this recommendation, conditionally granted his habeas petition, and "order[ed] that [he] be released from custody unless . . . his convictions for Armed Robbery[, Counts Two and Three] in [the State Case] [were] vacated and his sentence on the remaining Second Degree Recklessly Endangering Safety charge[, Count One in the State Case,] [was] amended to time served." Habeas Case, ECF No. 54 at 17, 22.

It appears that the prosecutor in the State Case followed the latter directive, because the State Case docket reflects that, in November 2025, an amended judgment of conviction was entered, presumably as to Count One only, and Counts Two and Three were dismissed. *See* State Case, "Charges" section and Nov. 24, 2025 docket entry. As a result of the amended judgment, and as his complaint in this case indicates, *see* ECF No. 1 at 1 (indicating non-custodial address), Parker is no longer incarcerated.

In his complaint in the present civil case, Parker says that "[his] conviction in [the State Case was] vacated." *Id.* at 2. This is not entirely accurate; his conviction as to Count One still stands.[2] *See* State Case,

---

[2]The State Case docket still indicates that the conviction as to Count One is pursuant to a finding of guilt at a jury trial, *see* State Case, "Charges section," rather than any plea agreement with the state that he might have retroactively entered. But the difference is immaterial because the conviction stands.

"Charges" section. His convictions as to Counts Two and Three are indeed vacated, however, by virtue of those charges having been dismissed. *See id.*

In this civil case, Parker correctly notes that the Court granted him habeas relief due to Attorney Bellows' constitutionally ineffective assistance. *See* ECF No. 1 at 2. He argues that he is now entitled to relief because, as a result of this constitutional violation, he "suffered a wrongful conviction and loss of liberty for . . . six extra years"[3] than he would have been incarcerated had he accepted the morning-of-trial plea offer." *Id.* at 2–3.

Parker does not sue Attorney Bellows. Rather, he argues that the County is liable for this constitutional violation under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978) (hereinafter "*Monell*"). *Id.* at 3. He alleges that this constitutional "violation was the result of a widespread custom or practice and failure to train staff to identify . . . ineffective counsel" and that the County "acted with deliberate indifference by failing to identify, intervene[,] or reflect [his] illegal detention for six years." *Id.* He further argues that his complaint is not barred by *Heck v. Humphrey*, 512 U.S. 477 (1994) (hereinafter "*Heck*") in light of the vacatur of his conviction (which, as the Court noted above, is only

---

[3]Parker was sentenced in February 2015 to a term of eight years' confinement as to Count One. State Case, Feb. 13, 2015 docket entry. His sentences for Counts Two and Three ran consecutive to that for Count One. *See id.* His release in November 2025 means that he spent approximately ten years and nine months in prison—almost three years greater than the eight-year sentence he received for Count One, which, as explained above, is his only remaining count of conviction. The Court is unsure where Petitioner draws the six years figure from. Had Petitioner originally accepted the morning-of-trial plea offer and been sentenced only for Count One, the state judge would still have had discretion to sentence him to imprisonment for anywhere from zero to ten years. *State v. Gallion*, 678 N.W.2d 197 ¶ 17 (Wis. 2004) (citing *McCleary v. State*, 182 N.W.2d 512, 519 (Wis. 1971)); WIS. STAT. § 939.50(3)(g).

partial). *Id.* For relief, he seeks over $4 million in total damages, comprising compensatory damages, past and future lost wages, damages for emotional distress and loss of family association, and punitive damages. *Id.* at 4.

## 4. ANALYSIS

Because Parker sues the County for violations of his constitutional rights, his claims proceed under 42 U.S.C. § 1983 (via *Monell*, which the Court will discuss momentarily). This statute allows suits for damages against state or local officers who commit civil rights violations "under color of" state law. 42 U.S.C. § 1983. However, "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk County v. Dodson*, 454 U.S. 312, 325 (1981) (footnote omitted); *see also McDonald v. White*, 465 F. App'x 544, 548 (7th Cir. 2012) ("[A] court-appointed public defender is not a state actor, and thus cannot be sued under 42 U.S.C. § 1983." (citing *Polk County*, 454 U.S. at 325)); *Powers v. Chandler*, 458 F. Supp. 2d 713, 716 (N.D. Ill. 2006) ("Public defenders and appointed counsel are not state actors for purposes of the Fourteenth Amendment." (citing *Sceifers v. Trigg*, 46 F.3d 701, 704 (7th Cir. 1995)). Accordingly, any suit premised on Bellows' constitutionally ineffective assistance "must be dismissed." *Polk County*, 454 U.S. at 325.

Of course, Parker does not sue Bellows, who was a private attorney representing him by state appointment.[4] Rather, he sues *the County*,

---

[4]Parker may have a legal malpractice claim against Attorney Bellows, but he does not attempt to raise such a claim here, affirmatively naming the County as the sole defendant. Such a claim, if pursued, arises under state law, and because Parker and Attorney Bellows are both Wisconsin residents, would likely belong in state court. *See Talmage v. Harris*, 354 F. Supp. 2d 860, 864 (W.D. Wis. 2005) (explaining elements of legal malpractice claim and citing *Lewandowski v. Cont'l Cas. Co.*, 276 N.W.2d 284, 287 (Wis. 1979)); 28 U.S.C. § 1332(a)(1) (noting that the

seemingly for allowing Attorney Bellows' ineffective assistance to go undetected and unaddressed both (1) at the time of trial and/or (2) while he was serving his sentence (which exceeded the length of any statutory maximum, *see supra* note 3 and accompanying text). *See* ECF No. 1 at 3 (alleging that Attorney Bellows' constitutionally ineffective assistance "was the result of a widespread custom or practice and failure to train staff to identify . . . ineffective counsel" and that the County "acted with deliberate indifference by failing to identify, intervene[,] or reflect [his] illegal detention for six years").

"[F]or purposes of *Monell* liability, the pertinent state action is the [government entity's]," not the individual employee's. *Byrne v. City of Chicago*, 447 F. Supp. 3d 707, 713 (N.D. Ill. 2019). "On a municipal liability claim, the [government entity's] policy itself must cause the constitutional deprivation. Therefore, the municipality itself is the state actor and its action in maintaining the alleged policy at issue supplies the 'color of law' requirement under § 1983." *Gibson v. City of Chicago*, 910 F.2d 1510, 1519 (7th Cir. 1990) (footnote omitted). Therefore, it does not matter that Attorney Bellows herself cannot be considered to have acted under color of state law in providing constitutionally ineffective counsel to Parker. What matters is Parker's allegation that County policy, practice, or failure to act caused the constitutional violation that led to his being incarcerated for longer than he otherwise would have been had he accepted the morning-of-trial plea agreement.

---

federal courts may hear cases under state law between "citizens of different [s]tates"). Alternatively, Parker could attempt to raise such a claim in this case via supplemental jurisdiction. *See* 28 U.S.C. § 1367.

The Court pauses here to note that the Wisconsin State Public Defender ("SPD"), rather than the County, may be the proper defendant. Generally, state public defenders are state employees, and appointed attorneys like Attorney Bellows are similarly compensated by the state. *See Skindzelewski v. Smith*, 944 N.W.2d 575 ¶ 5 n.4 (Wis. 2020) ("Because public defenders are state employees, the State represents Smith in this civil suit."); *Evers v. Dally*, 537 N.W.2d 149, *1 (Wis. Ct. App. 1995) (Table) ("[T]he allegations regarding legal malpractice necessarily relate to Dally's duties as a public defender, a state employee."); *Flowers v. State*, No. 25-CV-831-JPS, 2025 WL 2171623, at *2 (E.D. Wis. July 31, 2025) ( "Private attorneys who accept SPD appointments are compensated at state expense . . . ." (citing *In re Petition to Amend SCR 81.02*, Wis. Sup. Ct. Order No. 17-06, 2018 WI 83, at 12 (issued June 27, 2018, eff. Jan. 1. 2020)).

In some instances, an appointed defense attorney may be compensated by the county in which they provide representation: "[i]f lawyers are unavailable or unwilling to represent indigent clients at the SPD rate,' then the state court 'must appoint a lawyer . . . at county expense.'" *Flowers*, 2025 WL 2171623, at *2 (citing *In re Petition to Amend SCR 81.02*, Wis. Sup. Ct. Order No. 17-06, 2018 WI 83, at 15 (issued June 27, 2018, eff. Jan. 1. 2020)). There is no indication that this occurred in Parker's case. But, out of an abundance of caution, the Court will find at this time that either the SPD or the County could be an appropriate defendant for Parker's *Monell* claims, depending on how Attorney Bellows was appointed and paid.[5]

---

[5]The County may seek dismissal from this case if it is not the appropriate defendant, but should only do so after conferring with Parker and the SPD, in accordance with the Court's protocols, entered contemporaneously with this Order. ECF No. 6 at 3–4, 11.

Accordingly—and because, as explained below, Parker's complaint otherwise raises claims sufficient to survive screening—the Court will direct the Clerk of Court to add the State Public Defender as a defendant in this matter.

A claim of municipal liability under *Monell* requires the plaintiff to show, in addition an underlying constitutional violation: (1) a municipal action that amounts to a "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy"; (2) that that "policy or custom demonstrates municipal fault," which "where . . . the plaintiff alleges that the municipality has not directly violated his rights but rather has caused an employee to do so" requires the plaintiff to show that "the municipality's action [or inaction] was taken with deliberate indifference to the plaintiff's constitutional rights"; and (3) causation, that is, that "the municipality's action was the moving force behind the federal-rights violation." *First Midwest Bank Guardian of Est. of LaPorta v. City of Chicago*, 988 F.3d 978, 986–87 (7th Cir. 2021) (quoting *Monell*, 436 U.S. at 694, and *Bd. of Cnty. Commr's v. Brown*, 520 U.S. 397, 404, 407 (1997)) (internal quotation marks omitted).

A policy or custom may be shown by pleading "(1) an official policy adopted and promulgated by its officers; (2) a practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook Cnty. Sheriff's*

---

If SPD, or its leadership, is the proper defendant, it may still be entitled to sovereign immunity. *See Hendrix v. Ind. St. Pub. Def. Sys.*, 581 F. Supp. 31, 32 (N.D. Ind. 1984) (dismissing complaint as to Indiana Public Defender System "as an arm of the State of Indiana" under doctrine of sovereign immunity). However, the Court will leave this question for later motion practice, if appropriate; again, any such motion practice must comply with the Court's protocols.

*Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) (citing *Monell*, 436 U.S. at 690, and *Valentino v. Vill. of S. Chi. Heights*, 575 F.3d 664, 674 (7th Cir. 2009)). "Additionally, *Monell* liability can arise on a theory of municipal *in*action, such as a failure to train employees to avoid constitutional violations, because a municipality's 'policy of inaction' in light of notice that its program will cause constitutional violations is the functional equivalent of a decision by the [municipality] itself to violate the Constitution.'" *Cielak v. Nicolet Unified Sch. Dist.*, No. 22-CV-819-JPS, 2023 WL 6388933, at *12 (E.D. Wis. Sept. 29, 2023) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)), *aff'd sub nom. Cielak v. Nicolet Union High Sch. Dist.*, 112 F.4th 472 (7th Cir. 2024). One instance of a constitutional violation is not enough to show a policy or custom for *Monell* purposes, although "there is no clear consensus as to how frequently such conduct must occur." *Thomas*, 604 F.3d at 303 (citing *Cosby v. Ward*, 843 F.2d 967, 983 (7th Cir. 1988)).

The deliberate indifference element requires that a plaintiff show "that it was obvious that the municipality's action would lead to constitutional violations and that the municipality consciously disregarded those consequences." *LaPorta*, 988 F.3d at 987 (citing *Brown*, 520 U.S. at 407).

By way of his habeas petition, which the Court granted, Parker has shown an underlying constitutional violation: Attorney Bellows' failure to provide constitutionally effective counsel, in violation of the Sixth Amendment. The most basic element of a *Monell* claim is, therefore, satisfied.[6]

---

[6]Parker asserts that he suffered a wrongful conviction and loss of liberty as a result of the County (or SPD's) municipal fault. To the extent these might be separate constitutional claims, Parker need not plead or prove them because he can already show a constitutional violation: Attorney Bellows' ineffective assistance.

Parker's complaint further asserts that the County (or SPD) is liable under *Monell* for this violation because of its custom, practice, and/or inaction (failure to train staff). He also asserts that the County or its "[h]igh-ranking officials . . . acted with deliberate indifference" and that "[t]his systemic failure was the moving force" behind his incarceration exceeding the statutory maximum for Count One. ECF No. 1 at 3.

Parker's allegations are extremely barebones, but the Court will permit him proceed on a *Monell* claim at this time. He largely relies on "legal conclusions and conclusory allegations merely reciting the elements of the claim." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Ashcroft*, 556 U.S. at 680). Parker's allegations do not explain *why* he knows or believes that the County's (or SPD's) practices, customs, and/or lack of training caused Attorney Bellows' constitutional ineffectiveness in plea negotiations. His complaint does not specify what facts or occurrences, in his own experience and the experience of others, demonstrate (1) the existence of a policy or practice of allowing constitutional violations to occur, (2) deliberate indifference on the part of the County (or SPD), and (3) causation.

Despite these shortcomings, the Court is inclined to allow Parker proceed at this time. Parker is unlikely to know or have access to facts relating to County (or SPD) policy, custom, or training of public defenders and appointed attorneys at the time of the State Case, over a decade ago. The wiser exercise of the Court's discretion at this time is to let Parker proceed, particularly in light of the Court's obligation to liberally construe pro se filings. *Kelsay*, 825 F. Supp. at 217 (citation omitted).

In addition to noting that this case may still be subject to dismissal on other grounds, *see supra* note 5, the Court briefly observes two other

concerns that may warrant further motion practice. First, Parker's assertion that his *Monell* claim is not *Heck*-barred may need further unpacking. Because his conviction for Count One still stands, the question becomes "whether a judgment in [his] favor" on any *Monell* claim "would necessarily imply the invalidity of his conviction or sentence" for Count One. *Heck*, 512 U.S. at 487. Second, and relatedly, Parker's *Monell* claim may be time-barred, though it is far from clear how tolling would work in this case, where Parker's conviction was *partially* vacated in 2025 but otherwise has stood since 2015. *See Moore v. Burge*, 771 F.3d 444, 446 (7th Cir. 2014) ("*Heck* holds that a claim that implies the invalidity of a criminal conviction does not accrue, and the statute of limitations does not begin to run, until the conviction is set aside by the judiciary or the defendant receives a pardon."). These are complicated issues for sure, but do not preclude Parker from proceeding at this time.

**5. CONCLUSION**

For the reasons stated herein, Parker will be permitted to proceed on a *Monell* claim that a government policy, custom, or failure to train caused Attorney Bellows' ineffective assistance to go undetected and unaddressed both (1) at the time of trial and/or (2) while he was serving his sentence. This claim proceeds against the County as well as SPD, which the Court will direct the Clerk of Court to add as a defendant. The Court will further direct that the complaint be served on the County and SPD, a state agency represented by the Wisconsin Department of Justice, pursuant to the informal service agreements between each entity and the Clerk of Court.

Accordingly,

**IT IS ORDERED** that the Clerk of Court add the Wisconsin State Public Defender as a defendant on the docket;

**IT IS FURTHER ORDERED** that under an informal service agreement between the Wisconsin Department of Justice and this Court, a copy of the complaint and this Order have been electronically transmitted to the Wisconsin Department of Justice for service on Defendant the Wisconsin State Public Defender;

**IT IS FURTHER ORDERED** that under the informal service agreement, the Wisconsin State Public Defender shall file a responsive pleading to the complaint within **sixty (60) days**;

**IT IS FURTHER ORDERED** that under an informal service agreement between Milwaukee County and this Court, a copy of the complaint and this Order have been electronically transmitted to Milwaukee County for service; and

**IT IS FURTHER ORDERED** that under the informal service agreement, Milwaukee County shall file a responsive pleading to the complaint within **sixty (60) days**.

Dated at Milwaukee, Wisconsin, this 1st day of July, 2026.

BY THE COURT:

_____

J. P. Stadtmueller
U.S. District Judge

Plaintiff will be required to submit all correspondence and legal material to:

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

**DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS**. If mail is received directly to the Court's chambers, **IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE**.

Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE**.